IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RALPH S. JANVEY, IN HIS CAPACITY AS COURT-APPOINTED RECEIVER FOR THE STANFORD INTERNATIONAL BANK, LTD., ET AL., § § § § § Plaintiff, § § v. § § PABLO M. ALVARADO, *et al.*, § § Defendants. § | § § § § § § § § § § § § § § § | Civil Action No. 3:10-CV-2584-N |

## **ORDER**

This Order addresses Defendant Pablo M. Alvarado's motion to dismiss Plaintiff's first amended complaint [80]; Defendant Robert Glen Rigby's motion to dismiss [82]; and Defendant Rebecca Hamric's motion to dismiss Plaintiff's first amended complaint [83]. Because Plaintiff Ralph S. Janvey (the "Receiver") adequately pleads his claims against each Defendant, the Court denies the motions.

### I. THE ORIGIN OF THE MOTIONS

This action arises out of the Ponzi scheme perpetrated by R. Allen Stanford, his associates, and various entities under his control (collectively, "Stanford"). The facts associated with Stanford's scheme are well established, *see, e.g.*, *Janvey v. Democratic Senatorial Campaign Comm., Inc.*, 712 F.3d 185, 188–89 (5th Cir. 2013), and will not be recounted in great depth here. Essentially, Stanford's scheme entailed the sale of fraudulent

certificates of deposit ("CDs") through an offshore bank located in Antigua, known as Stanford International Bank Limited ("SIBL"). Although Stanford represented to investors that the CD proceeds were invested only in low-risk, high-return funds, in reality the proceeds were funneled into speculative real estate investments and used to fund Allen Stanford's extravagant lifestyle.

The Receiver brings this action on behalf of the Stanford estate[1] against three former lawyers who were employed by Stanford Financial Group Company ("SFGC").[2] Specifically, the Receiver alleges Alvarado served as General Counsel and head of the legal department for the worldwide Stanford operation. Hamric, meanwhile, worked as a corporate attorney for SFGC and Rigby, served as Chief Litigation Counsel and Assistant General Counsel for SFGC. The allegations supporting the Receiver's claims against each Defendant are numerous. In general, the Receiver alleges each Defendant knew or should have known that Stanford was a Ponzi scheme and yet continued to provide legal services that enabled Stanford to evade regulatory detection and continue his scheme. Based on these allegations, the Receiver asserts a claim for breach of fiduciary duty against each Defendant.

---

[1] The Receiver was appointed by this Court to represent the now defunct Stanford entities in the ongoing federal equity receivership. His rights and obligations are laid out in detail in this Court's Second Amended Order Appointing Receiver [1130], *in SEC v. Stanford Int'l Bank Ltd.*, Civil Action No. 3:09-CV-0298-N (N.D. Tex. filed Feb. 17, 2009).

[2] According to the Receiver, SFGC was the entity tasked with providing professional services to the other Stanford entities. First Am. Compl. ¶ 1 [73].

He, along with the Official Stanford Investors Committee ("OSIC"),[3] also seeks disgorgement of CD proceeds paid to Alvarado under both the Texas Uniform Fraudulent Transfer Act ("TUFTA"), TEX. BUS. & COM. CODE ANN. §§ 24.001–24.013, and an unjust enrichment theory. Defendants have each moved to dismiss.

## II. THE LEGAL STANDARDS

### *A. Rule 12(b)(6)*

When considering a Rule 12(b)(6) motion to dismiss, a court must determine whether the plaintiff has asserted a legally sufficient claim for relief. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court generally accepts well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff. *Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012). But a court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

---

[3]The Official Stanford Investors Committee is a body tasked with representing Stanford investors and has similar rights and responsibilities as a bankruptcy creditors' committee appointed under Title 11 of the United States Code. *See generally* Order, Aug. 10, 2010 [1149], *in SEC v. Stanford Int'l Bank, Ltd.*, Civil Action No. 3:09-CV-0298-N (N.D. Tex. filed Feb. 17, 2009).

will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations omitted).

### *B. Rule 9(b)*

Alvarado suggests that the elevated pleading standards of Rule 9(b) are also applicable to the Receiver's claims. Rule 9(b) requires a party alleging fraud or mistake to "state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). However, "[b]y its clear terms, Rule 9(b) applies only to averments of fraud or mistake, not to averments of negligence, breach of fiduciary duty or non-fraudulent misstatement." *Tigue Inv. Co., Ltd. v. Chase Bank of Tex., N.A.*, 2004 WL 3170789, at *2 (N.D. Tex. 2004). Rule 9(b) generally does not apply to TUFTA claims. *See Janvey v. Alguire*, 846 F. Supp. 2d 662, 675–76 (N.D. Tex. 2011). Nor does it typically apply to claims for unjust enrichment. *See Berry v. Bryan Cave LLP*, 2010 WL 1946264, at *8 (N.D. Tex. 2010). Thus, the Court does not apply the pleading standards of Rule 9(b) to the Receiver's complaint.

### III. THE COURT DENIES ALVARADO'S MOTION TO DISMISS

The Receiver's claims against Alvarado are for breach of fiduciary duty, recovery of fraudulent transfers under TUFTA, and unjust enrichment. Alvarado seeks dismissal of all three claims.

#### *A. The Receiver States a Claim Against Alvarado for Breach of Fiduciary Duty*

"The elements of a breach of fiduciary duty claim are: (1) a fiduciary relationship between the plaintiff and defendant; (2) the defendant must have breached his fiduciary duty

to the plaintiff; and (3) the defendant's breach must result in injury to the plaintiff or benefit to the defendant." *Jones v. Blume*, 196 S.W.3d 440, 447 (Tex. App. – Dallas 2006, pet. denied). Alvarado challenges the Receiver's pleading of each element.

***1. The Receiver Alleges the Existence of a Fiduciary Duty.*** – Alvarado argues that the Receiver has failed to allege facts supporting the existence of a fiduciary duty owed to any entity other than SFGC. Although the Receiver alleges that Alvarado was technically employed only by SFGC, he also alleges that in this role, Alvarado served as General Counsel and head of the entire Stanford operation's legal department. First. Am. Compl. ¶ 30. This Court has recognized that although the Stanford entities were facially independent, in reality they operated as a single entity. *E.g.*, *Janvey v. Alguire*, 2013 WL 2451738, at *2 (N.D. Tex. 2013). The Receiver has, at the very least, alleged facts that could support the existence of a fiduciary duty owed by Alvarado to multiple Stanford entities. *See Cleveland Const., Inc. v. Centex Const. Co., Inc.*, 2004 WL 594093, at *1 (N.D. Tex. 2004) ("Under Texas law, however, whether a relationship giving rise to a fiduciary duty exists is a question of fact.").

***2. The Receiver Alleges a Breach of Fiduciary Duty.*** – The Receiver has alleged that as an insider, Alvarado was privy to a number of allegations and regulatory inquiries into whether Stanford was operating a fraudulent scheme. First. Am. Compl. ¶ 31. The Receiver also alleges that Alvarado misled regulators by misrepresenting facts and law. *See id.* ¶¶ 36–40. These allegations and others asserted in the first amended complaint support the reasonable inference that Alvarado was on notice of a number of red flags concerning

Stanford's fraudulent scheme and nevertheless continued to provide material assistance. The Receiver has adequately pled that Alvarado breached the duties of care and loyalty. *See Resolution Trust Corp. v. Acton*, 844 F. Supp. 307, 315 (N.D. Tex. 1994) (providing that corporate fiduciaries breach the duty of care by committing acts of gross negligence); *In re Chavez*, 140 B.R. 413, 424 (Bankr. W.D. Tex. 1992) (noting that in Texas a director may breach the duty of loyalty by engaging in or promoting acts detrimental to the corporation).

*3. The Receiver Adequately Pleads Causation.* – Alvarado argues that the Receiver has failed to connect Alvarado's alleged conduct to any injury. The Court disagrees. The Receiver makes a number of allegations supporting the inference that Alvarado's assistance to Stanford's scheme enabled it to avoid regulatory scrutiny and continue to operate. The Receiver has adequately pled facts supporting causation such that it would be inappropriate to resolve Alvarado's challenge at the motion to dismiss stage. *See, e.g.*, *Millhouse v. Wiesenthal*, 775 S.W.2d 626, 627 (Tex. 1989) ("The determination of proximate cause is usually a question of fact.").

*4. The Receiver's Claim Is Timely.* – The Receiver first brought a claim for breach of fiduciary duty against Alvarado on February 15, 2013. *See* Receiver's Orig. Compl. 17, 33 [1], *in Janvey v. Hamric*, Civil Action No. 3:13-CV-0775-N (N.D. Tex. filed Feb. 15, 2013). The Fifth Circuit has recognized that the earliest the Receiver's claims on behalf of the Stanford entities accrued was February 16, 2009, the date of his appointment. *Democratic Senatorial Campaign Comm.*, 712 F.3d at 196. Under the four-year statute of

limitations for a breach of fiduciary duty claim, *see* TEX. CIV. PRAC. & REM. CODE ANN. § 16.004(a)(5), the Receiver's claim is therefore timely.

### B. The Receiver States a Claim Against Alvarado for Fraudulent Transfer

*1. The Receiver Pleads the Elements of a TUFTA Claim.* – Alvarado makes vague references to the Receiver's failure to plead that the alleged transfers were made with intent to defraud, or that they were made at a time when the Stanford entities were insolvent. To the contrary, the Receiver alleges that the Stanford entities were operating as a Ponzi scheme. *See, e.g.*, First Am. Compl. ¶¶ 3, 18, 19, 20. In the Fifth Circuit, proof that a debtor operated as a Ponzi scheme establishes fraudulent intent. *E.g.*, *Janvey v. Golf Channel*, 780 F.3d 641, 644 (5th Cir. 2015). It also establishes the debtor was undercapitalized, as is required for demonstration of a constructively fraudulent transfer. *See Quilling v. Schonsky*, 247 F. App'x 583, 586 (5th Cir. 2007) ("[A] Ponzi scheme is, as a matter of law, insolvent from inception.").

The Receiver has also pled that Alvarado did not give reasonably equivalent value in exchange for the CD proceeds transferred to him, another requisite element of a constructive fraudulent transfer claim. Alvarado argues that because he received his compensation pursuant to an arms-length relationship and the Receiver has failed to plead his compensation was somehow unreasonable, he must have given value in exchange for his compensation. However, by alleging that Alvarado's services as an employee were in furtherance of the Stanford Ponzi scheme, the Receiver has adequately pled that the Stanford entities did not receive reasonably equivalent value. The Fifth Circuit has established a high bar for

ORDER – PAGE 7

demonstrating the provision of valuable services to a Ponzi scheme. *See Golf Channel*, 780 F.3d at 646–47 (holding an innocent trade creditor does not provide value to a Ponzi scheme where the provided services encouraged investment in the scheme). Like the defendant's conduct in *Golf Channel*, Alvarado's alleged conduct furthered the Ponzi scheme. Thus, in pleading that Stanford was operating as a Ponzi scheme, the Receiver has pled the elements of both an actual and constructive fraudulent transfer claim.

### *2. The Receiver Has Standing to Bring His Fraudulent Transfer Claim.* –

Alvarado argues the Receiver lacks standing to assert a claim as a creditor under TUFTA. This argument has been repeatedly rejected, including by the Fifth Circuit. *Democratic Senatorial Campaign Comm.*, 712 F.3d at 192 ("[T]he Receiver has standing to assert the claims of SIBL, and any other Stanford entity in receivership, . . . to recover the contributions made to [transferees] without reasonably equivalent value by the Stanford Ponzi operation."). The Receiver has standing to assert TUFTA claims on behalf of the Stanford entities.

### *3. The Receiver's Claims Are Timely.* –

Alvarado seeks dismissal of any TUFTA claim under Texas Business and Commerce Code section 24.006(a), for return of transfers that took place prior to December 17, 2006. This argument requires assessment of factual issues concerning when the alleged transfers occurred, and as such is not yet ripe for consideration.

### *C. The Receiver States a Claim for Unjust Enrichment*

Alvarado argues that the Receiver's claim for unjust enrichment fails because a valid contract governed Alvarado's relationship with the Stanford entities. *See* Alvarado's Mot.

Dismiss 12–13 (citing *Coghlan v. Wellcraft Marine Corp.*, 240 F.3d 449, 454 (5th Cir. 2001)). Unjust enrichment is a theory of recovery applicable "when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage." *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992); *see also Mowbray v. Avery*, 76 S.W.3d 663, 679 (Tex. App. – Corpus Christi 2002, pet. denied) ("[R]ecovery under a theory of unjust enrichment is not dependent on wrongdoing by the opposing party."). Under the elements as listed in *Heldenfels*, unjust enrichment does not require the nonexistence of an applicable contract. Thus, the Receiver has adequately pled his claim for unjust enrichment.[4]

The Court denies Alvarado's motion to dismiss in its entirety.

### IV. THE COURT DENIES RIGBY'S AND HAMRIC'S MOTIONS TO DISMISS

The Receiver brings claims against Rigby and Hamric for breach of fiduciary duty. The parties primarily disagree over whether the Receiver has adequately pled that Rigby and Hamric owed fiduciary duties to the Stanford entities. Both Rigby and Hamric argue that the

---

[4]The Court has repeatedly recognized confusion as to the state of the law in Texas regarding claims for unjust enrichment. *See, e.g.*, *Janvey v. Alguire*, 846 F. Supp. 2d 662, 673–74 (N.D. Tex. 2011). The principal point of confusion is whether unjust enrichment is merely a theory of damages, or an independent cause of action. *See id.* Alvarado is correct that Texas courts have indicated that a plaintiff may not recover under unjust enrichment when a valid contract governs the dispute. *See, e.g.*, *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 683–84 (Tex. 2000) (describing unjust enrichment as a quasi-contract theory, and noting quasi-contract recovery is inapplicable when a valid contract exists). It remains unclear whether such holdings apply to unjust enrichment as a theory of damages, or unjust enrichment as an independent cause of action. In any event, the Receiver has pled that Alvarado was paid with funds that were stolen from third party investors, raising a question as to whether the contract between Alvarado and Stanford was in fact valid.

conduct the Receiver alleges is irrelevant to his claims because it does not implicate any duties that an attorney owes to his or her client.  *See* Rigby's Mot. Dismiss 4–10; Hamric's Mot. Dismiss 5–10.

The Receiver, in turn, argues his complaint alleges that both Rigby and Hamric owed fiduciary duties to the Stanford entities beyond the duty of care they owed as attorneys.  The Receiver alleges Rigby served as Chief Litigation Counsel and Assistant General Counsel for SFGC from 2005 to 2009.  First Am. Compl. ¶ 97.  He alleges Hamric served as a corporate attorney for SFGC from 1999 to 2009.  *Id.* ¶ 60.  Both Rigby and Hamric, the Receiver alleges, were highly compensated insiders who functioned differently than ordinary in-house attorneys.  *See id.* ¶ 27.  Thus, the Receiver argues Rigby and Hamric took on fiduciary duties through their "special relationship of trust and confidence" with the Stanford entities.  Receiver's Resp. Rigby's Mot. Dismiss 9 [89].

Whether and to what extent a fiduciary duty is owed by an employee to an employer requires consideration of "all aspects of the relationship."  *Nat'l Plan Adm'rs, Inc. v. Nat'l Health Ins. Co.*, 235 S.W.3d 695, 700 (Tex. 2007).  As mentioned above, this inquiry necessarily requires consideration of the operative facts in this case.  *See Cleveland Constr., Inc.*, 2004 WL 594093, at *1 ("Under Texas law, however, whether a relationship giving rise to a fiduciary duty exists is a question of fact."); *accord Seven Seas Petroleum, Inc. v. CIBC World Mkts., Corp.*, 2010 WL 2277489, at *6 (S.D. Tex. 2010) ("'[T]he existence of a fiduciary relationship, outside of formal relationships that automatically give rise to fiduciary duties, is usually a fact intensive inquiry.'" (quoting *ARA Auto. Grp. v. Cent. Garage, Inc.*,

124 F.3d 720, 723 (5th Cir. 1997))). The Receiver has made sweeping allegations concerning Rigby and Hamric's involvement in the Stanford enterprise. The Court cannot yet conclude as a matter of law that Rigby and Hamric owed no fiduciary duties. *See Cleveland Constr., Inc.*, 2004 WL 594093, at *1 ("[I]t is possible that [plaintiff] could prove facts within the scope of the complaint that would show the existence of a fiduciary duty.").[5]

Rigby and Hamric also argue the Receiver has failed to plead proximate cause. For the same reasons discussed above, *see supra* Subpart III.A.3, the Court finds the challenge to causation premature. The Receiver has alleged both Rigby and Hamric provided support to the fraudulent Stanford entities that perpetuated the Stanford fraud. The Court declines to resolve more particular questions of causation at this stage. *See Millhouse*, 775 S.W.2d at 627.

## CONCLUSION

For the foregoing reasons, the Court denies Defendants' motions to dismiss.

Signed June 24, 2015.

_____
David C. Godbey
United States District Judge

---

[5] By the same token, whether the Receiver can prove a breach of any fiduciary duties depends on the scope of those duties.

ORDER – PAGE 11